BONUS WAREHOUSE, INC., Respondent, v GREAT ATLANTIC INSURANCE COMPANY OF DELAWARE, Appellant.

BONUS WAREHOUSE, INC., Respondent, v NORTH RIVER INSURANCE COMPANY, Appellant.

Second Department, May 23, 1983

### APPEARANCES OF COUNSEL

*Ira J. Greenhill* (*Zachary Robb Greenhill* of counsel), for appellants.

*Weg Myers & Jacobson, P. C.* (*Andrew C. Jacobson* and *Ira M. Myers* of counsel), for respondent.

### OPINION OF THE COURT

NIEHOFF, J.

By the instant two actions plaintiff seeks payment under fire insurance policies issued by the respective defendants. On these appeals we are concerned with defendants' motions for summary judgment based upon the first defense set forth in each of their answers which alleges that

plaintiff failed to provide the particular defendant with a proof of loss within 60 days after said defendant made a written demand for it.

It is undisputed that defendants made written demand for proof of loss from plaintiff on August 27, 1981 and August 31, 1981, respectively, and that plaintiff did not provide defendants with the requested material until January 15, 1982, two and one-half months after the 60-day deadline.

In denying each of the defendant's motions for summary judgment Special Term wrote: "The court here finds that there are disputed issues of fact as to whether plaintiff's delay in providing defendant with a proof of loss is a 'technical and unimportant omission' given the fact that plaintiff has 'substantially performed its obligation to cooperate' with defendant."

We conclude that Special Term properly determined that triable issues of fact presently exist which call for the denial of defendants' motions for summary judgment. That being so, we affirm the orders of Special Term which are the subject of these two appeals.

The essential facts are as follows:

On April 6, 1981 a fire occurred at premises known as 95A Bell Street, West Babylon, New York. Housed in those premises was plaintiff, Bonus Warehouse, Inc., a wholesale auto parts distributor. It is claimed that as a result of the fire all of the stock, merchandise and records of plaintiff were destroyed. At the time of the fire plaintiff had in effect a fire insurance policy with defendant Great Atlantic Insurance Company of Delaware in the amount of $50,000 and a similar policy with defendant North River Insurance Company in the amount of $100,000.

On or about March 8, 1982 the plaintiff began the present actions in order to recover on those policies. Both defendants appeared by the same attorney who served similar answers on their behalf containing denials of allegations of plaintiff's complaint and three affirmative defenses, to wit, (1) failure by the plaintiff to render sworn proof of loss within 60 days after the demand for same; (2)

failure of plaintiff to submit to an examination under oath; and (3) limitation of any recovery due the plaintiff to the defendant's pro rata share of coverage.

By notices of motion dated April 5, 1982 both of the defendants moved for summary judgment in their favor based upon the first affirmative defense, i.e., the plaintiff's purported failure to timely serve and file sworn proofs of loss in support of its claim against the carriers. In support of their motions the defendants submitted affidavits from the claims examiner of Great Atlantic Insurance Company and the property claims manager of North River Insurance Company to the effect that the insurance policies required the insured to file a sworn proof of loss within 60 days after the demand for a proof of loss is made by the carrier. The affiants went on to state that by letters dated August 31, 1981 and August 27, 1981, respectively, demand for proof of loss was made on behalf of the carriers, that the plaintiff's proofs of loss were not received until January 16, 1982 some two and one-half months late and that on January 20, 1982 they were rejected by their companies as untimely.

Plaintiff's opposition to the summary judgment motions was based primarily upon the affidavit of its president, Stanley Levy. In essence, Mr. Levy claimed that the plaintiff's short delay in serving its sworn proofs of loss was neither willful nor intentional and that the delay was excusable. More specifically, Mr. Levy stated that within two or three days after the loss he attended a meeting at the site of the fire with his public adjuster as well as adjusters from each of the carriers (the defendants' answers admit that the plaintiff gave them prompt notice) who interviewed Mr. Levy concerning the loss and told him that the loss would be adjusted within two to three months. Thereafter, pursuant to the requests of the defendants, Levy supplied them with a list of Bonus Warehouse Inc.'s customers, a list of its suppliers, the company's business records and its tax returns. Furthermore, Mr. Levy instructed the firm's accountant to co-operate with the accountants hired by the defendants to examine the plaintiff's business records. On June 2, 1981 Mr. Levy executed a nonwaiver agreement as requested by the defendants.

The next contact Mr. Levy had concerning the claim were letters dated August 27, 1981 and August 31, 1981, respectively, from the attorney representing both of the carriers wherein Mr. Levy was "requested" to file proofs of loss on the blank forms supplied with the letter and was "requested" to appear with all his records and submit to an examination under oath. Upon receiving the letters, Mr. Levy telephoned his public adjuster and was told that if the insurance companies wanted an examination under oath they were entitled to it. Since the examination date fell on the Jewish high holy day of Rosh Hashanah, Mr. Levy wrote to the attorney for the defendants to adjourn the examination. By return letter the examination was rescheduled to October 12, 1981, which was a legal holiday — Columbus Day. Thereafter, the examination was again adjourned during which time the plaintiff retained an attorney. In his affidavit in opposition to the motions for summary judgment, Mr. Levy contended that he had been misled by the conduct of the defendants' representatives in that the request for proof of loss contained in the attorney's letters was a two-sentence request squeezed into a two-page letter calling for Mr. Levy to produce various records, most of which had already been supplied to the insurance companies by his accountant and his adjuster and some of which Mr. Levy could not possibly get copies of, since they were destroyed in the fire, and some records which he could not obtain copies of for quite some time. Mr. Levy also complained of the fact that nowhere in the attorney's letters did counsel advise him that he must submit the proofs of loss within 60 days. Mr. Levy asserted that "I felt that I had already proved my loss and supplied all of my records to the insurance companies and at every point of the proceedings I always made every effort to cooperate with them and give them whatever information they wanted, either through myself, my accountant or plaintiff's public adjuster".

Moreover, Mr. Levy claimed that all requests for information including the nonwaiver agreement had been made by defendants to his public adjuster while the request for the proofs of loss were made directly to him in a letter from an attorney who had not even been involved with the claim

at all up to that time, which led him to believe that the attorney for defendants was not aware of the fact that he had furnished defendants with various records. Finally, Mr. Levy noted that he had co-operated with the defendants in every possible manner including the filling out and filing of proofs of loss which were then rejected as untimely by the defendants' attorney.

In addition to Mr. Levy's affidavit, the plaintiff submitted affidavits of David Cooperstone, the plaintiff's public adjuster, Stuart Bruskin, its accountant, and an attorney's affidavit substantiating the history set forth in Mr. Levy's affidavit and itemizing the records and data forwarded to the various representatives of the defendant carriers.

In their reply affidavits, the defendants noted that everything plaintiff alluded to did not alter the fact that it failed to timely file the proofs of loss and defendants maintain that, therefore, the actions had to be dismissed.

As noted above, Special Term denied defendants' motions for summary judgment holding that triable issues of fact exist. In addition, Special Term denied plaintiff's *request* to strike the three affirmative defenses raised in the answers of the defendants. No cross motion was made by plaintiff for such relief. Rather, the request was embodied in plaintiff's opposing papers. Hence, no appeal has been taken by the plaintiff with regard thereto and neither that aspect of Special Term's decision nor the other affirmative defenses set forth in the defendants' answers are before us for review.

Our reasons for affirming Special Term's denial of summary judgment on behalf of defendants are set forth below.

Each of the subject policies contains the following requirement in the event of loss: "within 60 days after the loss the insured shall render to this Company a proof of loss signed and sworn to by the insured".

However, section 172 of the Insurance Law, enacted in 1939 as a remedial statute, was designed to protect an "insured from the consequences of his oversight or neglect in complying with one of the conditions precedent to a recovery under the policy, namely, his failure to file proofs of loss within sixty days after the loss or damage insured

against" (*Margulies v Quaker City Fire & Mar. Ins. Co.,* 276 App Div 695, 698). That section, which relates to property insurance proofs of loss, provides that the failure to furnish proof of loss to the insurer as specified in the contract shall not be deemed to invalidate or diminish the insured's claim "unless such insurer * * * shall, after such loss or damage, give to such person insured a written notice that it * * * desire[s] proofs of loss to be furnished by such person to such insurer * * * and also a suitable blank form * * * for such proofs of loss." (Insurance Law, § 172, subd 1.) The section goes on to state that "[i]f the person insured shall furnish proofs of loss within sixty days after the receipt of such notice and such form or forms * * * such person shall be deemed to have complied with the provisions of such contract of insurance relating to the time within which proofs of loss are required." Prior to the enactment of section 172, an insured's failure to file a proof of loss within 60 days after the loss meant that he was not entitled to recover under the policy, i.e., it provided the carrier with an absolute defense to the action (Insurance Law, § 168; *Quinlan v Providence Washington Ins. Co. of Providence,* 133 NY 356; *Gallin v Allemannia Fire Ins. Co.,* 184 App Div 876, affd 230 NY 547; *Peabody v Satterlee,* 166 NY 174). Now, the burden rests upon the carrier to serve a demand and a blank proof of loss form upon its insured in order for it to rely upon said defense.

In the case at bar, it is not disputed that defendants served a demand and supplied plaintiff with appropriate forms during the last week of August, 1981. Likewise, it is not disputed that plaintiff complied with the demands of defendants and returned sworn proofs of loss to both of the carriers in January, 1982. The record reveals further that plaintiff, its public adjuster and accountant co-operated with the adjusters and representatives of defendants by supplying information and records to them and that plaintiff's president sought, on a number of occasions, to schedule his examination under oath as requested by defendants. At most then, we are dealing with a two and a half month delay by plaintiff in the submission of its proofs of loss.

Plaintiff contends that such delay was nonwillful and should be excused. On the other hand, defendants argue that the failure of plaintiff to file the proofs of loss within 60 days after written demand furnishes them with an absolute defense to plaintiff's claim.

Recently, in the case of *Lentini Bros. Moving & Stor. Co. v New York Prop. Ins. Underwriting Assn.* (53 NY2d 835), a unanimous Court of Appeals affirmed the dismissal of the complaint in an action on a fire insurance policy where the plaintiff failed to file a proof of loss or to submit to an examination by the defendant insurer. In affirming the dismissal the Court of Appeals noted that the case was not one in which the plaintiff could "be found to have substantially performed its obligation to co-operate" (53 NY2d 835, 836, *supra*), that the plaintiff offered "no suggestion of a reason for non-compliance", and that "[i]n view of the insured's unexcused and willful refusal to comply, there is no reason to deny summary judgment dismissing the complaint unconditionally" (53 NY2d 835, 837, *supra*). The implication contained in the language selected by the Court of Appeals seems clear, namely, that summary judgment is warranted against an insured whose failure to submit formal proofs of loss is unexcused and willful, but that a delay in furnishing proof of loss does not absolutely and under all circumstances bar a recovery under a policy. Stated differently, the Court of Appeals appears to us to be saying that situations may arise where failure to timely submit such proofs will not result in an automatic dismissal of the insured's suit on the policy.

In the *Lentini* case the dismissal of the action was predicated not only upon the unexplained failure of the plaintiff to timely file a sworn proof of loss, though demanded, but also upon its failure to appear for its examination under oath or for that matter even to request or obtain an adjournment thereof (see *Lentini Bros. Moving & Stor. Co. v New York Prop. Ins. Underwriting Assn.*, 76 AD2d 759, 760).

As to the proof of loss request, a further distinction exists in that in the *Lentini* case there was no attempt by the plaintiff to file a proof of loss before it instituted its action against its insurer, whereas in the case at bar plaintiff did,

in fact, serve defendants with sworn proofs of loss, before the claims were rejected by the defendants. These distinctions are significant ones and compel the conclusion that *Lentini* does not dictate a dismissal, as a matter of law, in the instant case.

The purpose of a contractual provision for proof of loss is "to allow the insurer to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud and imposition upon it" (see 31 NY Jur, Insurance, § 1261). Plaintiff claims that such purpose had been fulfilled by the defendant carriers' conducting thorough investigations in which plaintiff co-operated completely with them prior to the time it received their formal demands for proof of loss; that plaintiff had substantially complied with the proof of loss requirement in the policy by the time the proof of loss was demanded by supplying the carriers with virtually all the information called for by the proofs of loss before they were even demanded; that defendants lulled plaintiff into a false sense of security by delaying five months before requesting the proofs of loss; and that by delaying the oral examination defendants thereby led plaintiff to believe that the main thing that defendants were interested in was taking an examination under oath.

Certainly, as the record presently stands, we cannot say that this is a case where an insured has made a concerted effort to impede the insurer's investigation of the alleged losses or has sought to conceal relevant information from the carriers. Indeed, the record seems to show the contrary — a willing undertaking by the insured to assist the insurer so as to bring about a recovery on the policies. Given the language in the *Lentini* case we are not prepared to hold (1) that the mere two and one-half month delay in the submission of the written proof of loss forms upon which defendants seek summary judgment is to be equated, as a matter of law, with a willful, unexcused failure to comply with the contractual requirement for filing such a form and (2) that such delay, in and of itself, is an absolute bar to the maintenance of this lawsuit.

In short,, it is our view that *Lentini* (*supra*), indicates that the belated service of the proofs of loss does not *ipso*

*facto* ordain a judgment in favor of a defendant insurer in an action brought on a property insurance policy. Although the delay in serving proofs of loss will not automatically foreclose a recovery on the policy, the plaintiff insured, having failed to timely serve a proof of loss, will be called upon to bear the burden of showing that his failure was excusable. Such a holding squares with and carries out the remedial intent of section 172 of the Insurance Law. Because of the state of the record before us, further inquiry is necessary in order to determine whether plaintiff's failure to submit its proofs of loss within 60 days from the date of demand therefor was excusable.

In making that determination the trier of the facts should consider and evaluate such elements as the purpose behind the requirement for a proof of loss; the nature and extent to which plaintiff and his representatives had cooperated with defendants prior to the time the demand for the proofs of loss was made by defendants; the nature and extent of the information in defendants' possession before the demand was made by defendants as compared with that which the proofs of loss would have disclosed; the reasons offered by plaintiff for the delay; the length of the delay; and the conduct of defendants during their investigation of the claim as disclosed by the demand letter and their subsequent actions.

In sum, the trier of the facts after being presented with all the relevant evidence on such factors as those outlined above should determine whether plaintiff's delay in providing defendants with proofs of loss is excusable as a technical and unimportant omission, which should not prevent plaintiff from recovering for any legitimate loss sustained as a result of the fire, or whether the delay must be classified as unexcusable and willful, thereby precluding a consideration of the merits of plaintiff's claim.

For the reasons enumerated above, the motions for summary judgment dismissing the complaints on the first affirmative defenses set forth in each of the answers of the defendants were properly denied and the orders appealed from should be affirmed insofar as appealed from.

LAZER, J. P., GIBBONS and BOYERS, JJ., concur.

Two orders of the Supreme Court, Suffolk County, both dated July 17, 1982, affirmed insofar as appealed from, with one bill of costs.